BOODY v. DREW *et al.*, appellants.

*Demurrer — improper joinder of defendants — accounting.*

Plaintiff and a number of others associated together for the purpose of operating in the stock of a railroad company. They appointed four of their number as managers, who were to buy and carry the stock until a specified time, when the stock was to be divided among the associates in specified proportions. The associates were to furnish the means in certain agreed proportions, and were to share the profits or losses in like proportions; the man

Boody v. Drew.

agers were to take title to the stock in their own names, and were to engage in certain transactions in respect to the stock for the mutual benefit of all, but were not to deal in the stock of the company in question upon their own individual account. At the time designated for terminating the agreement the managers represented that they had on hand a certain number of shares of the stock, which had cost a specified sum, and demanded of plaintiff and other associates that they should respectively take up and pay for their ratable proportion of shares, which demand was complied with by plaintiff.

Plaintiff brought action against the managers and the other associates, setting forth, in his complaint, the foregoing facts, and alleging that the managers had violated their agreement not individually to deal in the stock, had improperly managed their trust, made improper charges and had not properly accounted; that upon a proper accounting between the managers and the associates, and between the associates themselves, a large sum of money would be found due the plaintiff, and prayed that an accounting be had from the managers, and between the associates.

*Held* (INGRAHAM, P. J., dissenting), that plaintiff's right to an account was upon the facts stated against the managers alone. An adjustment having been made between the managers and plaintiff, and, presumptively, the rest of the associates, he cannot elect for the other associates to undo that adjustment merely because he is dissatisfied, and a demurrer to the complaint, upon the ground of an improper joinder of the associates with the managers, as defendants, should be sustained.

THIS was an action to compel an accounting. The complaint is sufficiently set out in the opinion. To this complaint the defendants Drew, Cortwright, Baylis and Cox, who are described in the complaint as "*the managers*," demurred, upon the ground, first, that the plaintiff could not commence an action on his own behalf without joining the other associates, and that the other associates should have been made parties plaintiff, instead of parties defendant; and, second, that the settlement of the accounts of the "managers," and the settlement of the accounts of all the defendants, who are described in the complaint as "the associates," were two causes of action which could not be joined.

A motion for judgment, on the ground of the frivolousness of the demurrer, was denied. Afterward, on argument, the demurrer was overruled, with leave to answer. From the order overruling the demurrer this appeal was taken by the so-called "managers."

*F. F. Marbury* and *Joshua M. Van Cott*, for appellant.

*John E. Burrill*, for respondents.

FANCHER, J. The case made by the complainant may be briefly stated. The allegations are substantially these: 1. That the firm of Kenyon Cox & Co. (composed of Kenyon Cox, Horace Manuel, Wm. M. Hutchison and Daniel Drew) and Azariah Boody (who is the plaintiff), Milton Cortwright, Abraham B. Baylis, Stephen H. Allen, John M. Hutchison, Sidney Dillon and John S. Casement, entered into an agreement, in December, 1871, to be interested, in certain agreed propositions, in the purchase, sale and ultimate division of seventy-one thousand shares of the common stock of the Toledo, Wabash & Western Railway Co., and to share in the profit and loss in like proportions. Managers named were to buy and carry the stock until November 1, 1872. 2. That the title to said stock should be taken by four managers, viz.: Daniel Drew, Milton Cortwright, Abraham B. Baylis and Kenyon Cox, who should buy, sell and manage the same till November, 1872; and that the managers might increase the number of shares by buying and selling "puts." 3. That the proportions in which said parties should be interested in said stock were as follows:

Azariah Boody.................................12,500 shares.
Daniel Drew..................................30,000 shares.
Milton Cortwright............................ 7,500 shares.
Kenyon Cox & Co............................. 5,000 shares.
Stephen H. Allen............................ 5,000 shares.
John M. Hutchison.......................... 5,000 shares.
Abraham B. Baylis.......................... 2,000 shares.
Sidney Dillon............................... 2,000 shares.
John S. Casement........................... 2,000 shares.

4. That each party should furnish to the managers the money and securities required to buy and carry his agreed proportion of the stock, or be subject to sale and forfeiture. And that the managers might employ brokers to buy and sell stock, and might sell privileges to put and call stock. 5. That the managers should not deal in said Toledo, Wabash & Western railway stock on their individual account. 6. That the managers should keep accounts of all the transactions. 7. That the transactions should be closed November 1, 1872, and the respective parties should then take from the managers their ratable proportion of the shares on hand, paying to the managers their ratable proportion of the cost, and bearing their

ratable proportion of any losses that might result. 8. That on the 1st November, 1872, the managers represented that 88,500 shares were on hand; that they had cost $6,767,619.89; that the plaintiff's proportion of the shares was 15,600 shares, and his proportion of the cost was $1,192,936.68; that thereupon said managers demanded that the plaintiff should take up such 15,600 shares, and should pay therefor such last-mentioned sum, and as he is informed and believes, said managers made similar demands upon others of the subscribers to said contract, that they should take up their proportion of said shares on hand, and pay their proportion of the cost price, as above stated. 9. That the managers violated their agreement not to deal with the stock on their individual account, but had dealt therein, and "turned in" their stock to the account of the associates. 10. That the managers had improperly managed the trust, and made improper charges to the cost of carrying the stock ; that they have not properly accounted; that, in adjusting with the plaintiff, they had put on him some of their individual shares, as a part of the stock belonging to the associates, and that upon a proper accounting between the managers and associates, and between the associates themselves, "there will be found due to the plaintiff a large sum of money" — without saying *from whom* — by implication from the managers. 11. That the plaintiff is entitled to an account *from the managers*. The complainant prays that the managers may account accordingly; "and that an account may be had and taken between the several subscribers to the said contract of December, 1871, of all the transactions had and conducted thereunder." That each subscriber may be decreed to pay to the other's whatever may be found due, and the plaintiff offers to pay what he may be found to owe; and that plaintiff may have such other or further relief as to the court may seem proper.

It is apparent, from the complaint, that the plaintiff's right to an account is, upon the facts stated, a right against the managers alone. It depends upon the stipulations of the agreement, and the transactions of the managers. It does not depend upon the plaintiff's ignorance of the state of the general partnership account. If it did, that account, by the plaintiff's own showing, cannot be re-opened at so late a day, except for sufficient cause stated as against all the associates. It must have been adjusted between the managers and the other associates, when the several rights to the shares of stock were ascertained, and the stock distributed on the

1st of November, 1872. The plaintiff alleges that the managers made demands upon the several associates for their contributions, and states that he *took his shares of the stock.* That could not be, unless the shares of the other associates were ascertained. The plaintiff makes ground for the irresistible inference that the other associates took their shares of the stock as well as himself. The complaint does not state any facts sufficient to authorize the re-opening of that adjustment, except as to the managers. It alleges, that the plaintiff took his share of the stock, returning his securities; and, if, as it must be inferred, the other associates, on the 1st of November, 1872, also took from the managers their shares of stock, they must, severally, have made their respective adjustments with the managers. What ground of complaint has the plaintiff against any of the associates to re-open an adjustment of accounts thus deliberately made? The only grounds stated in the complaint are, that the managers violated their independent agreement not to deal in the stock on their individual account; that the managers had improperly managed the trust; had made improper charges to the cost of carrying the stock, and have not properly accounted. Let it be granted. It then follows, that the plaintiff may have his action against the managers, and, if he substantiate his allegations, may have redress to the amount he has been damnified. But it by no means follows that the plaintiff can elect, for the other associates, to undo the November settlement, or call on them for a further account, or compel them to submit to the plaintiff's desire for a new adjustment. The plaintiff must have assented to one adjustment when he took his share of stock. The other associates may prefer to keep their stock apportioned when the plaintiff took his share.

Before they could be induced to come into the new position, where the plaintiff seeks to place them, they might wish to consider whether they had better surrender what they received in the November settlement, and claim a new deal, or whether their interests are best subserved by standing upon the settlement. Certainly they have the right to adhere to the settlement, if they wish to do so; and the plaintiff has no right to volunteer, as their champion, to break it up. He may act for himself, but not for them, unless they consent, which they have not done.

The plaintiff, as it appears from the complaint, is dissatisfied with the adjustment made between the managers and the other

associates. He has set forth nothing that would induce the court to set aside the adjustment as to any of the associates, except the managers. The plaintiff retains all the stock he received. He does not offer to return, or allege his ability to return, any part of it. He does not allege that any other associate is dissatisfied, nor that any of them, but the managers, had any participation in or suspicion of any act or omission of the managers, of which the plaintiff complains. The plaintiff should be left to make out his case against the managers, if he can. But, before he can have all the associates summoned to respond to his actions, he must allege some cause of action against them. His complaint, as it now stands, alleges no, cause of action against any of the defendants, except the managers. He states, that "although *he has taken up his stock*, and redeemed the securities deposited by him with said managers, he has been unable to obtain from them a statement of the transactions conducted by them under and in pursuance of said contract." If the plaintiff has taken his shares of the stock, he has had all the advantage of the same. He may have sold it and received the proceeds. He does not offer to return the stock nor the proceeds of it; but avails himself of the benefit of the agreement to the extent of recovering all his share of the stock. He is not in a position to call any of the associates to account, except the managers, and the complaint is not sufficient, in my judgment, to enable him to do so, as against the other associates.

The only portion of the complaint relied upon by the plaintiff in the particular which calls for an account from the associates other than the managers, is the following: "And the plaintiff further alleges that the managers have not accounted, in respect to the transactions covered by the agreement of December 22, 1871, and on information and belief, that the accounts between the several associates in respect thereto are unadjusted and unsettled, and that, if said accounts were adjusted and settled between the managers and the associates, and between the several associates as between themselves, there will be found to be due to this plaintiff a large amount of money."

But this paragraph of the complaint, in connection with all other averments therein, and the prayer thereof make out no more than a cause of action against the managers. It is "as to the transactions covered by the agreement" in respect of which the plaintiff, on information and belief, alleges the accounts between the several associates

are unadjusted and unsettled. Yet those transactions so far as to apportion the stock were assented to by the plaintiff. None of the associates, except the plaintiff, may complain of the adjustment of those "transactions." If they received their portion of stock, when they were entitled to it, in November, 1872, they may be satisfied. If any sum be found due the plaintiff, as claimed by the complaint, it is not averred that it will be due from any but the managers. Nor are any facts alleged from which it would result that any one is liable to the plaintiff, except the managers.

I think the judgment should be reversed with costs; and the demurrer sustained, with liberty to the plaintiff to amend, on payment of costs.

BRADY, J., concurred.

INGRAHAM, P. J., dissenting. The complaint in this case set out an agreement made between all the parties to this action, by which it was agreed to engage in the purchase of stock to a fixed amount, and in which agreement each party undertook to be responsible for a specific number of shares. A committee of four was named, who were to be managers of the stock, with certain powers conferred on them thereby.

It also avers the purchase of stocks, the payment by the plaintiff of the moneys for which he was responsible, and that the managers have violated the terms of the agreement on their part, and refuse to give the plaintiff any account of the transactions referred to, and he asks for such accounting.

The complaint concludes with a prayer for a general accounting among all the defendants, and a decree for contribution from those who are found to be indebted.

There can be no doubt but that the plaintiff could state a good cause of action against the four managers, if they were the sole defendants. If they have stock that plaintiff has paid for, and they will neither give him the stock nor render an account, equity will compel one or both remedies.

But the complaint does not claim any damages from the managers as distinct from the other associates. It shows that these managers, who were also associates, and selected to take the management of carrying out the contract for all the associates, have not properly discharged their duties, but alleges they bought and sold large

amounts of stock, borrowed large sums of money, and paid large amounts of commissions, etc., and also alleges that such payments were unnecessary.

No claim is made against the managers, except for an account of their transactions for the associates. The whole object of the complaint appears to be an accounting between the parties or associates generally, including, of course, the accounting of the managers, without which the general accounting could not take place, and also a decree for contribution between the respective partners, in order to carry out the terms of the original agreement.

The whole complaint contains but one cause of action, and is consistent with the avowed object, viz., a final accounting and settlement between all the associates. As such it is not bad, on demurrer. It may contain some allegations that are irrelevant or immaterial, which might be stricken out on motion, but the insertion of such matters is not a good ground for demurrer.

It was said that all the associates should have been made plaintiffs, unless they refused. That would be so, if the object was to recover from the managers for the benefit of the partnership, but is not necessary where the sole object is to wind up the business and have a final settlement between them. In such a case any one of the associates may bring the action. The order appealed from should be affirmed.

*Order reversed.*